**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| TRACI TAKACS-TAUB, | CASE NO. 3:25-CV-02732-JJH |
| Plaintiff, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Traci Takacs-Taub[1] challenges the Commissioner of Social Security's decision denying her request that mother's benefits as a surviving spouse (hereinafter, "mother's benefits") be deemed retroactive to April 2014. (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Dec. 16, 2025). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision and **DENY** Ms. Takacs-Taub's Motion in the Alternative for a Sentence Six Remand (ECF #11).

## PROCEDURAL BACKGROUND

When Ms. Takacs-Taub's husband, Jeff Taub, passed in April 2014, she applied for child's benefits on behalf of their shared child and for a lump-sum payment. (Tr. 145-48). At some point

[1] The Social Security Administration processed the claimant's application under the name associated with her Social Security number, Traci A. Takacs. (*See, e.g.*, Tr. 50). For clarity, I refer to her as Ms. Takacs-Taub, the name under which she filed her Complaint. (ECF #1).

after 2014, Ms. Takacs-Taub and her child moved to Ohio. (*See* Tr. 21). On October 28, 2022, Ms. Takacs-Taub applied for mother's benefits. (*See* Tr. 11).

On March 11, 2023, the Social Security Administration (SSA) determined Ms. Takacs-Taub did not qualify for mother's benefits because she did not show she and Mr. Taub were married under the laws of New York, where Mr. Taub lived at the time of his death. (Tr. 46). On April 24, 2023, Ms. Takacs-Taub appealed the determination and explained that she tried to apply for mother's benefits in April 2014, but the SSA employee would not accept her application because she and Mr. Taub were married under common law, a form of marriage the SSA employee said was not recognized in New York. (Tr. 43). Three days after appealing, Ms. Takacs-Taub submitted a copy of an order from the Superior Court for the District of Columbia, dated April 25, 2023, showing the validity of her and Mr. Taub's common-law marriage, established on August 26, 2006 in Washington, D.C. (Tr. 157-61). On June 13, 2023, the SSA found she was entitled to mother's benefits beginning April 2022, six months before the date of her application. (Tr. 50-52).

In July 2023, Ms. Takacs-Taub requested the award of benefits date back to April 2014, asserting that because her common-law marriage was deemed valid, she should be entitled to retroactive benefits beginning on the date she would have filed for mother's benefits if not for the misinformation from the SSA representative that New York does not recognize common-law marriages. (*See* Tr. 11). In April 2024, the SSA concluded Ms. Takacs-Taub was not eligible for an earlier entitlement date for the following reasons:

> In some States a valid marriage may be created without a formal ceremony; these marriages are called common-law marriages. In the ordinary common-law marriage, the marriage is entered into by the mutual consent of the parties to become husband and wife from that time on and is not solemnized by a ceremony. The parties must have the intent to marry, must consider themselves husband and wife and, in some States, must cohabitate and hold themselves out to the public as husband and wife.

> Both persons must be legally capable of entering into a valid marriage. The marriage must be contracted in a State where common-law marriages are recognized.
>
> You initially contacted the Social Security application [*sic*] on April 14, 2014, to file an application for child's benefits on behalf of [A.T.] on the record of Jeffrey Alan Taub. [A.T.'s] application was processed, and she was awarded child's benefits with a month of entitlement of April 2014. At that time, you attested that you and Jeffrey Alan Taub were never married. You did not file an application for benefits as a mother at that time.
>
> You later applied [*sic*] an application for benefits on October 28, 2022. At that time, you told us that you and Jeffrey Alan Taub had a common-law marriage relationship in Washington, D.C.
>
> You submitted proof of a Court Order which established you entered into a common-law marriage with Jeffrey Alan Taub beginning August 26, 2006. The Court Order was issued on April 25, 2023.
>
> In your appeal, you requested that you be awarded benefits back to April 2014. Unfortunately, we are unable to grant this request because you did not file an application for mother's benefits at that time. In your appeal you stated that you told the Social Security representative that you were in a common law marriage in April 2014. You stated the representative told you that New York State does not recognize common-law marriage and did not take your application. Your local Social Security office investigated this claim when you filed for benefits on October 28, 2022. They determined that the Social Security representative did not give you incorrect information which delayed you in filing your application for benefits. New York State does not recognize common-law marriage. You did not tell the representative that the common-law marriage took place in Washington, D.C. You also did not provide evidence of the common-law marriage at that time. The earliest evidence you have provided is the Court Order issued April 25, 2023. Therefore, we cannot grant your request for benefits to begin April 2014.

(Tr. 57-58).

Ms. Takacs-Taub then requested a hearing before an Administrative Law Judge and testified before the ALJ on April 8, 2025. (Tr. 24-42, 59). On September 15, 2025, the ALJ determined Ms. Takacs-Taub was not entitled to a retroactive start date of April 2014 because "no misinformation was provided" at the time. (Tr. 15). On November 14, 2025, the Appeals Council denied Ms. Takacs-Taub's request for review of the ALJ's decision, making the ALJ's decision the

final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.981). Ms. Takacs-Taub timely filed this action. (ECF #1).

## FACTUAL BACKGROUND

At the administrative hearing, Ms. Takacs-Taub testified about her first attempt to file for mother's benefits as Mr. Taub's surviving spouse. In April 2014, Ms. Takacs-Taub's husband passed away in New York, where he lived. (Tr. 26). She first spoke with an SSA representative over the phone about eligibility for child's benefits for their child and mother's benefits for herself. (*Id.*). She then met with a representative at the local SSA office in New York with documents she had been instructed to bring with her, including insurance paperwork, bank statements, an affidavit from Mr. Taub's mother, and greeting cards from Mr. Taub's mother referring to her as her daughter-in-law. (Tr. 26-27). There, she told the representative she and Mr. Taub were married under common law in Washington, D.C., and she recalled feeling shocked when the representative said New York does not recognize common-law marriages. (Tr. 26-27). The representative informed Ms. Takacs-Taub that she would not accept her application for mother's benefits. (Tr. 27). The representative did not tell Ms. Takacs-Taub that she could still file an application for benefits, and the agency could deny her claim, so she did not file for mother's benefits in 2014. (Tr. 29). Ms. Takacs-Taub also testified she does not recall telling the representative that she was not married to Mr. Taub. (Tr. 28).

The SSA's Special Review Cadre investigated Ms. Takacs-Taub's claim that she did not apply for mother's benefits in 2014 due to misinformation from the SSA representative that New York did not recognize common-law marriage. The SSA gathered internal claim-path records documenting Ms. Takacs-Taub's initial contact with the local SSA office on April 14, 2014. Those

records document the conversation took place over the telephone, and they discussed child's benefits and a lump sum payment. (Tr. 293). During that telephone conversation, the SSA representative documented the information gathered from Ms. Takacs-Taub: "NH [number holder] self-employed. Was paying child spt [support] and providing medical. States NH never married. No other dependent children." (Tr. 287-88).

During the administrative hearing, Ms. Takacs-Taub testified she attempted to provide the SSA employee with documents supporting her common-law marriage in person but was turned away. (Tr. 26). After the hearing, Ms. Takacs-Taub submitted those documents to the ALJ for review. (Tr. 205-48).

## Eligibility for Mother's Benefits

An individual may be eligible for benefits on an insured person's earning record if the individual was related to the insured person as a wife, husband, widow, or widower. 20 C.F.R. § 404.344. Eligibility for such benefits is governed by 42 U.S.C. § 402(g)(1). Under the statute, the surviving spouse of an individual who died a fully or currently insured individual, is entitled to mother's benefits if the surviving spouse (A) is not married; (B) is not entitled to a surviving spouse's insurance benefit; (C) is not entitled to old-age insurance benefits; (D) has filed an application for mother's benefits; and (E) at the time of filing such application has in her care a child of the insured who is entitled to a child's benefit insurance. 42 U.S.C. §§ 402(g)(1)(A)-(E). To determine the nature of the claimant's relationship to the insured person as a surviving spouse, the SSA looks to the laws of the state where the insured person had a permanent home at time of death. 20 C.F.R. § 404.345. The relationship requirement is met if the claimant and the insured person were validly married under state law at the time the insured person died. *Id.*

Relevant to Ms. Takacs-Taub's asserted error, if the Commissioner determines to his satisfaction that a claimant did not apply for benefits because the SSA representative gave the claimant misinformation about her eligibility for benefits, the individual shall be deemed to have applied for such benefits on the later date of (A) the date on which such misinformation was provided to the individual, or (B) the date on which the individual met all the requirements for entitlement to such benefits (other than application thereof). 42 U.S.C. §§ 402(j)(5)(A)-(B).

**THE ALJ'S DECISION**

On September 15, 2025, the ALJ reviewed the available evidence and determined the SSA did not provide misinformation to Ms. Takacs-Taub that caused her to delay filing her application for mother's benefits in 2014 and so she was not entitled to a retroactive application date of April 14, 2014. (Tr. 14). The ALJ explained as follows:

> The claimant asserts that she did not file for Title II mother's benefits in April 2014 because an employee at her local field office told her that she did not qualify due to her common law marriage with the decedent not being recognized in the state of New York. At the hearing, the claimant testified that she met the decedent in Washington, D.C. in 2006. Within the first year of their relationship, they became engaged, were expecting a child, and began calling each other husband and wife. By the end of 2006, the couple moved to Buffalo, New York, and lived as husband and wife for six years. The couple separated in 2012, and the claimant moved out of their shared domicile. The claimant testified that when she submitted her daughter's applications, she told the field office employee that she was married and tried to submit documents supporting the relationship, including joint bank statements and family health insurance plans. However, the field office would not accept any of these documents without a marriage license.
>
> After review of all the evidence of record, the undersigned finds that the agency did not make misrepresentations to the claimant in April 2014. At the time the claimant filed for child's and lump sum benefits for her daughter, the claimant reported on forms submitted that the "deceased was not survived by a spouse". Internal reports taken during that April 2014 appointment show that claimant stated that the decedent was "never married". The claimant received summaries of the applications submitted on April 14, 2014, that reiterated her statements that the decedent was unmarried at the time of his death, and she was given the opportunity to correct any

> statements that were recorded incorrectly. The claimant did not correct or attempt to correct her statements about the nature of their marriage until almost nine years later.
>
> In support of her position, the claimant submitted documentation showing that she and the decedent held themselves out as husband and wife, including health insurance documents, an automobile transfer, bank statements, and bills. She asserts that she brought this documentation with her to the appointment in April 2014 to prove her relationship with the decedent, but the field office employee would not accept them. Although these documents may show that the couple considered themselves married, they are all documents from New York state where common law marriage is not legally valid. Even if the field office employee accepted these documents as evidence of the couple's relationship, they were not considered legally married under the laws of the state where the decedent died. While the claimant argues that she had evidence of her valid marriage in April 2014, she did not articulate to the agency that her common law marriage was formed and valid in Washington, D.C. The claimant did not communicate that her common law marriage was formed in a jurisdiction other than New York until October 2022, almost nine years later.
>
> Additionally, the documents that the claimant submitted as proof of common law marriage were submitted in May 2025. None of these documents were submitted to the agency in the two-and-a-half years while she challenged the agency's determination. The claimant had ample opportunity to provide these documents in October 2022, when she applied for mother's benefits, in various filings in 2023, including her request for reconsideration, and in 2024 in her request for hearing. The claimant alleged that she brought these documents with her when applying for benefits for her daughter, but the internal report of contact shows that the appointment was over the phone. She would have been unable to provide this documentation during her telephone appointment, despite her assertions to the contrary. Furthermore, the claimant was separated from the decedent for two years prior to his death. They were no longer cohabitating or holding themselves out as husband and wife after 2012.

(Tr. 14) (record citations omitted).

## Standard of Review

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters*, 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not follow its

own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## Discussion

Ms. Takacs-Taub claims she is entitled to a retroactive application date of April 14, 2014. (ECF #8 at PageID 356). She alleges she intended to apply for mother's benefits at that time but did not do so after being told she was ineligible because "New York does not recognize common law marriage." (*Id.*). She contends that because the state of New York recognizes common-law marriages established in other states, the SSA representative misinformed her of her eligibility and therefore "she is entitled to mother's benefits with a deemed filed date of April 14, 2014, because it was agency misinformation that caused her not to file on that date." (*Id.*). In a separate filing submitted 15 days after the briefing schedule concluded, Ms. Takacs-Taub requested that if the Court does not find error in the ALJ's decision, the Court consider remand for consideration of new and material evidence under Sentence Six of 42 U.S.C. § 405(g). (ECF #11).

**I. The ALJ properly determined Ms. Takacs-Taub has not shown the SSA provided misinformation that caused her not to file for benefits at an earlier date.**

**A. The ALJ applied the correct legal standards and his conclusion is supported by substantial evidence.**

Social security regulations state that if the agency provides misinformation about an individual's eligibility for benefits and the misinformation causes the individual not to file an application at that time, then the individual's later application for benefits may be deemed to have been filed at an earlier date. 20 C.F.R. § 404.633. To be eligible for an earlier application date based on misinformation, four elements must be shown:

> (1) The misinformation must have been provided to [the individual] by one of [SSA's] employees while he or she was acting in his or her official capacity as [an] employee.
>
> (2) Misinformation is information which [the SSA] consider[s] to be incorrect, misleading, or incomplete in view of the facts which [the individual] gave to the employee, or of which the employee was aware or should have been aware, regarding [the individual's] particular circumstances, . . . In addition, for [the SSA] to find that the information [the individual] received was incomplete, the employee must have failed to provide [the individual] with the appropriate, additional information which he or she would be required to provide in carrying out his or her official duties.
>
> (3) The information may have been provided to [the individual] orally or in writing.
>
> (4) The misinformation must have been provided to [the individual] in response to a specific request by [the individual] to [the SSA] for information about [the individual's] eligibility for benefits for which [the individual] w[as] considering filing an application.

*Id.* §§ 404.633(c)(1)-(4). To prove a misinformation claim the individual must first present evidence that misinformation was provided. *Id.* § 404.633(d).

The regulations set forth the SSA's express preference for written evidence showing the SSA gave the individual misinformation, including but not limited to "a notice, letter, or other

document which was issued by [the SSA] and addressed to [the individual]," or the SSA's "record of [the individual's] telephone call, letter, or in-person contact." *Id.* §§ 404.633(d)(1)(i)-(ii). "In the absence of preferred evidence," the SSA will consider other evidence, including the individual's statements about the alleged misinformation, statements from others who were present when the individual was given the alleged misinformation, statements from the employee alleged to have provided the misinformation, an evaluation of the credibility and validity of the individual's allegations, and any other information regarding the alleged contact. *Id.* §§ 404.633(d)(2)(i)-(v). But the SSA will not find that one of its employees gave the individual misinformation based solely on the individual's statements. *Id.* § 404.633(d)(2). Other evidence the individual provides or that the SSA obtains must support the individual's statements about the misinformation. *Id.*

Here, the ALJ first considered (1) the internal claim-path documentation in which the SSA employee noted Ms. Takacs-Taub stated Mr. Taub was never married; (2) her completed application for child's benefits in which she indicated Mr. Taub did not leave a surviving spouse; and (3) the absence of a form correcting that statement in the application. (Tr. 14). The ALJ then considered the documents Ms. Takacs-Taub asserted she brought to the SSA office to show that she and Mr. Taub held themselves out as a married couple. (*Id.*). The ALJ agreed the documents show they held themselves out as a married couple in New York but found that because the state of New York does not recognize common-law marriages purportedly established in New York, the documents would not have proven the existence of a common-law marriage, even if accepted. (*Id.*). Later, the ALJ indicated Ms. Takacs-Taub could not have provided the supporting documentation to the SSA employee because the appointment took place over the phone. (*Id.*). The ALJ then

found that Ms. Takacs-Taub did not inform the SSA employee that the common-law marriage was formed in Washington, D.C. (*Id.*).

From this, I conclude the ALJ properly applied the correct legal standards in evaluating Ms. Takacs-Taub's misinformation claim and substantial evidence supports the ALJ's conclusion. Under the regulations, misinformation is measured against the facts the individual gave to the SSA employee. 20 C.F.R. § 404.633(c)(2). So, if the information provided to the individual is correct based on the facts the individual relayed to the SSA employee, the individual cannot succeed on a misinformation claim. As Ms. Takacs-Taub correctly notes, the state of New York does not recognize a common-law marriage purportedly established in that state, but New York will recognize a common-law marriage validly contracted in another state. *Mott v. Duncan Petroleum Trans.*, 414 N.E. 2d 657, 658 (N.Y. 1980). In contrast, the District of Columbia recognizes common-law marriages. *Coates v. Watts,* 622 A.2d 25, 27 (D.C. 1993). The ALJ determined Ms. Takacs-Taub did not tell the SSA employee that her common-law marriage was formed in Washington, D.C., a fact substantially supported by internal agency notes that Ms. Takacs-Taub reported Mr. Taub was never married and by her attestation in the application for child's benefits that Mr. Taub did not leave a surviving spouse. *See Besaw*, 966 F.2d at 1030 (noting substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Thus, the SSA employee's statement that Ms. Takacs-Taub was not eligible for mother's benefits because New York does not recognize common-law marriages was a correct statement based on the information the SSA employee had.

Arguing against that conclusion, Ms. Takacs-Taub points to her own testimony at the hearing that she verbally informed the SSA employee that her common-law marriage was entered

into in the District of Columbia and also contends the documents she tried to give the SSA employee prove that marriage. (ECF #8 at PageID 363-64). True enough, one of the documents shows that in November 2011, Ms. Takacs-Taub and Mr. Taub attested they established a common-law marriage in Washington, D.C. on August 26, 2006. (Tr. 206). Had the SSA employee been privy to that information in 2014 and found it sufficient to establish a marital relationship, then the employee's statement that Ms. Takacs-Taub was ineligible for mother's benefits because New York does not recognize common-law marriage would be incorrect. But the ALJ did not accept Ms. Takacs-Taub's testimony that she relayed that information, verbally or in supporting documentation. (Tr. 14) ("The claimant did not communicate that her common-law marriage was formed in a jurisdiction other than New York until October 2022"). On review, the court may not re-weigh the evidence to reach a contrary conclusion or decide for itself that Ms. Takacs-Taub's testimony was credible. *See Brainard*, 889 F.2d at 681.

Ms. Takacs-Taub also argues the ALJ's decision to discount her testimony on this point amounts to error because the ALJ "did not offer any reason to believe that [she] did not follow up in person and bring documents regarding both her daughter and the marriage, as she testified she did." (ECF #8 at PageID 364). I conclude Ms. Takacs-Taub has not shown legal error here because in the absence of evidence corroborating her statements, the ALJ properly discounted her testimony. *See* 20 C.F.R. § 404.633(d)(2) ("We will not find that we gave you misinformation, however, based solely on your statements. Other evidence which you provide or which we obtain must support your statements."). The ALJ offered a clear and reasonable explanation for not accepting Ms. Takacs-Taub's testimony, articulating that she alleged to have brought documents with her when applying for benefits but "the internal report of contact shows the appointment was

over the phone" and "[s]he would have been unable to provide this documentation during her telephone appointment, despite her assertions to the contrary." (Tr. 14). This comports with the ALJ's task to evaluate "the credibility and the validity of [the] allegations in conjunction with other relevant information." 20 C.F.R. § 404.633(d)(2)(iv). Moreover, the SSA employee Ms. Takacs-Taub spoke to contemporaneously documented her statement that Mr. Taub was never married, further discounting her assertion that the SSA employee knew their common-law marriage was formed outside of New York, or at all, for that matter. For those reasons, I decline to recommend remand on this basis.

**B. Ms. Takacs-Taub has not shown the SSA did not follow its own procedures for developing common-law marriages.**

Ms. Takacs-Taub also asserts the SSA employee did not follow the agency's specific procedures for developing common-law marriage allegations, thereby prejudicing her claim and depriving her of a substantial right. (ECF #8 at PageID 366-67). She contends the SSA employee did not properly develop her assertion of common-law marriage under POMS GN 00305.065: Development of Common-Law (Non-Ceremonial) Marriages. (*Id.*). That provision provides that common-law marriage determinations are to be made under state law and sets forth the preferred evidence the SSA employee should secure from the claimant to support the existence of a common-law marriage, including a statement of marital relationship from the surviving spouse and statements regarding marriage from one blood relative of the surviving spouse and two blood relatives of the deceased spouse. *Id.*

The Program Operation Manual System (POMS) "is a policy and procedure manual that employees of the SSA use in evaluating Social Security claims." *Davis v. Sec'y of Health & Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). "POMS guidelines are not legally binding on the Court

and do not bind the Commissioner." *Johnson v. Comm'r of Soc. Sec.*, No. 5:21-cv-1721, 2022 WL 2612113, at *16 (N.D. Ohio Apr. 14, 2022) (discussing cases), *report and recommendation adopted*, 2022 WL 2712174 (N.D. Ohio July 13, 2022); *see also Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (holding POMS guidelines "do not bind the Commissioner."); *Davis*, 867 F.2d at 340 (explaining that POMS "does not have the force and effect of law" but "is nevertheless persuasive"). And "the Agency's failure to follow a POMS procedure does not give rise to a due process violation." *Selyak v. Comm'r of Soc. Sec.*, No. 1:17-cv-1627, 2018 WL 3244618, at *11 (N.D. Ohio May 22, 2018) (quotation omitted), *report and recommendation adopted*, 2018 WL 3241241 (N.D. Ohio July 3, 2018). Thus, an SSA employee's failure to follow a POMS procedure would not likely justify remand.

But even if such failure could justify remand, Ms. Takacs-Taub has not established such a failure occurred here. The evidence on which the ALJ relied, namely the internal claims documentation, is the only evidence of record suggesting she discussed common-law marriage with the SSA employee and it is inconsistent with Ms. Takacs-Taub's testimony. Moreover, another provision in the POMS directs SSA employees to "[d]evelop a common-law marriage only if there is some indication that one exists." *See* SSA POMS GN 00305.060, http://secure.ssa.gov/apps10/poms.nsf/lnx/0200305060. In this case, the evidence suggests there was no such indication. Consider the internal claims evidence. Ms. Takacs-Taub applied for benefits under her maiden name, Traci A. Takacs, not her husband's last name or a hyphenated name. (*See, e.g.,* Tr. 293). During the telephone appointment, the SSA employee documented her report that Mr. Taub was never married. (*Id.*). And Ms. Takacs-Taub's application for a lump-sum payment submitted in connection with the application for child's benefits states "The deceased is

not survived by a spouse." (Tr. 145). From this information, the SSA employee interviewing Ms. Takacs-Taub could reasonably conclude there was no evidence of a common-law marriage and so did not inquire further. Thus, Ms. Takacs-Taub has not shown the SSA did not follow their own procedures for developing common-law marriages.

Admittedly, this is a harsh result, especially given the apparent validity of Ms. Takacs-Taub's common-law marriage to Mr. Taub at all relevant junctures of the administrative process. If correct, the evidence she relies on for her argument presents a compelling narrative: During a telephone appointment, she asked about benefits for their child and mother's benefits for her as the surviving spouse in a common-law marriage established in Washington, D.C. Then, Ms. Takacs-Taub met with an SSA employee in person to provide documents supporting the existence of her common-law marriage, at which time the SSA employee told her that New York does not recognize common-law marriages and refused to accept her application for mother's benefits.

But these assertions come directly from Ms. Takacs-Taub's testimony alone and are not supported by contemporaneous, corroborating evidence. Ms. Takacs-Taub's testimony alone is not enough. *See* 20 C.F.R. § 404.633(d)(2). Moreover, the ALJ relied on preferred evidence directly contradicting Ms. Takacs-Taub's testimony and narrative, primarily the internal claim-path documentation. *See id.* § 404.633(d)(1). Because an ALJ may not find the SSA gave an individual misinformation based solely on the individual's statements, the ALJ here properly discounted Ms. Takacs-Taub's testimonial evidence per 20 C.F.R. § 404.633(d)(2), and the ALJ's conclusion has the support of substantial evidence.

For these reasons, remand under Sentence Four is not warranted.

**II. Ms. Takacs-Taub is not entitled to a remand under Sentence Six.**[2]

After the parties submitted their briefs on Ms. Takacs-Taub's misinformation claim, she filed a Motion in the Alternative for Remand Under Sentence Six. (ECF #11). In an accompanying affidavit she explained she found the application for widow's benefits she completed in 2014, and an Affidavit of Common Law Marriage and Parentage Acknowledgment completed in 2007, both of which the SSA staff refused to accept. (*Id.* at PageID 402). The application purportedly completed in 2014 is not dated. (ECF #11-1 at PageID 409-14). According to her affidavit, Ms. Takacs-Taub discovered these records in "late 2025" when she was opening old boxes of unorganized paperwork dating back to 2012. (*Id.* at PageID 404). She explained she and her daughter left the marital home in New York in 2012 due to domestic violence and experienced housing instability between 2012 and 2018. (*Id.*). During that time, she put many of her papers and records into boxes and placed them in a storage unit in Buffalo, New York. (*Id.*). When she and her daughter moved to Ohio, those records were transferred to a storage unit in Ohio. (*Id.*). After Ms. Takacs-Taub purchased a home in 2024, she moved the contents of the storage unit to her basement. (*Id.* at PageID 405). In late 2025, she discovered these materials

[2] In addition to opposing Ms. Takacs-Taub's request on the merits, the Commissioner also contends she waived this argument by not raising it in her initial brief on the merits. (ECF #12 at PageID 418). It is well-established that parties may not raise new arguments in a reply brief and such issues raised in that manner are treated as waived. *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008). This is because asserting new arguments in a reply effectively deprives the opposing party of the opportunity to expose weaknesses in the moving party's arguments. *Id.* (citation omitted). Although Ms. Takacs-Taub presented this request well after her initial brief, the Commissioner opposed it on the merits. Because the Commissioner was not deprived the opportunity to oppose the request and the result is the same, I do not address waiver.

when she began sorting the previously stored boxes and provided them to counsel. (*Id.*). By that time, the deadline to submit new materials to the Appeals Council had expired. (*Id.*).

Remand under Sentence Six of § 405(g) authorizes the ALJ to consider evidence presented after the ALJ's decision. *Lee v. Comm'r of Soc. Sec.*, 529 F.App'x 706, 717 (6th Cir. 2013). Sentence Six provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g). Thus, a district court may order a Sentence Six remand to take additional evidence if (i) the evidence is "new" and "material," and (ii) "good cause" is shown for the claimant's failure to incorporate the evidence into the record at a prior proceeding. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). The claimant bears the burden of showing remand is appropriate. *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). For the purposes of a Sentence Six remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). And evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition" on the claim provided the new evidence. *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows

"good cause" by showing a reasonable justification for not obtaining and presenting the evidence in the hearing before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Ms. Takacs-Taub contends the application for widow's benefits she purportedly completed in 2014 and the Affidavit of Common Law Marriage signed in 2007 are "legally new because it was not in the record, was only rediscovered post-hearing, and became critical once the Commissioner relied on the absence of electronic records supporting [her] testimony." (ECF #13 at PageID 424). Ms. Takacs-Taub appears to recognize the two pieces of evidence are not "new" as that term is defined in *Sullivan*, but she argues that a mechanical application of the requirements for remand under Sentence Six should not apply to her case because the evidence she seeks to submit are not medical records but "personal property whose legal significance was suppressed by the agency itself." (ECF #13 at PageID 424). Ms. Takacs-Taub does not point to any case law, statute, or regulation suggesting the requirements to obtain a remand under Sentence Six differ depending on the nature of evidence presented. Moreover, I agree with the Commissioner that the evidence is not new. By Ms. Takacs-Taub's own admission, the two documents existed and were in her possession, either in a storage unit or her basement, since their creation.

I am also not persuaded the evidence is not "material," *i.e.* that there is a reasonable probability the ALJ would have reached a different conclusion had the ALJ reviewed those documents. Ms. Takacs-Taub contends the handwritten application for widow's benefits and the 2007 Affidavit of Common Law Marriage support her account that she met with an SSA employee in person to discuss common-law marriage. (ECF #13 at PageID 427). But consider the evidence the ALJ relied on and the evidence the ALJ discounted. The ALJ accepted the internal SSA records showing the claim was taken over the telephone and based on that evidence, discounted

Ms. Takacs-Taub's testimony that she brought documents with her to an in-person meeting after the initial telephone call. (Tr. 14) ("She would have been unable to provide this documentation during her telephone appointment, despite her assertions to the contrary."). The evidence relevant to Ms. Takacs-Taub's request for a Sentence Six remand falls into the same category of evidence as the documents already submitted to the record, *i.e.*, evidence purportedly supporting her testimony that she discussed her common-law marriage with the SSA employee. The purportedly new evidence is, thus, cumulative of evidence already part of the record. Cumulative evidence is not material for purposes of a remand under Sentence Six. *See Walton v. Astrue,* 773 F.Supp.2d 742, 751 (N.D. Ohio 2011) (finding claimant's purportedly new evidence not material because the evidence was "largely cumulative" of evidence already part of the record) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005)).

Finally, Ms. Takacs-Taub asserts "[g]ood cause exists because the agency-provided misinformation and refusal to accept paperwork in 2014, coupled with long-term storage and unawareness of possession, made the documents practically unavailable during the administrative proceedings." (ECF #13 at PageID 422). The Court need not decide whether Ms. Takacs-Taub has shown good cause because she has not shown the evidence is new or material. "Fail[ing] to establish any one of these three elements is fatal to the moving party's request." *Glasco v. Comm'r of Soc. Sec.*, 645 F.App'x 432, 435 (6th Cir. 2016), citing *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 n.1 (6th Cir. 1988).

For the reasons set forth above, Ms. Takacs-Taub has not shown that remand under Sentence Six is appropriate. Therefore, I decline to recommend remand under Sentence Six.

## CONCLUSION AND RECOMMENDATION

After reviewing the record, the parties' arguments and the law, I recommend the District Court **AFFIRM** the Commissioner's decision denying entitlement to mother's benefits before April 2022 and **DENY** Ms. Takacs-Taub's Motion in the Alternative for a Sentence Six Remand.

Dated: November 16, 2026



DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).**